UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

In re:

     BERNADETTE NEDD,                             Case No. 22-42353
                                         Chapter 13
                       Debtor.

-------------------------------------------------------------------x

     MARCUS NEDD,                             Adv. Pro. No. 22-01093

                       Plaintiff,

          -against-

     BERNADETTE NEDD,

                       Defendant.
-------------------------------------------------------------------x

## MEMORANDUM DECISION ON MOTION FOR SANCTIONS AND <u>REQUEST FOR ATTORNEY'S FEES</u>

*Appearances*:

| | |
|---|---|
| Brian Perskin, Esq. | Nigel E. Blackman, Esq. |
| 44 Court Street (Suite 1210) | Eastbrook Legal Group |
| Brooklyn, NY  11201 | 11 Broadway (Suite 615) |
|   *Attorneys for Plaintiff Marcus Nedd* | New York, NY  10004 |
| |   *Attorneys for Defendant Bernadette Nedd* |

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Before the Court is the request of the plaintiff Marcus Nedd for an award of sanctions, in the form of an award of attorney's fees and costs, against the former Chapter 13 debtor, Bernadette Nedd.  Mr. Nedd makes this request in the context of his opposition to the dismissal of Ms. Nedd's Chapter 13 case.  His request has its roots not only in Ms. Nedd's Chapter 13 bankruptcy case, but also in a lengthy matrimonial proceeding that has been pending in New York Supreme Court for more than five years.  In substance, Mr. Nedd asks this Court to consider his request for sanctions, in the form of an award of attorney's fees and costs before this action is dismissed and closed.

This motion calls for the Court to consider when sanctions may be appropriate, and on what grounds – and several grounds are advanced by Mr. Nedd here.  Some, such as Bankruptcy Code Section 523(a)(2)(A), address the dischargeability of a debt "to the extent obtained by . . . false pretenses, a false representation, or actual fraud," and do not generally provide a basis for an award of sanctions or attorney's fees.  11 U.S.C. § 523(a)(2)(A).  Others, including the Court's inherent authority and Judiciary Code Section 1927, may, in the appropriate circumstances, provide grounds for a sanctions award.

When they do, a significant consideration in assessing whether sanctions are warranted may well be the debtor's good faith in seeking and pursuing bankruptcy relief.  Several factors inform the court's assessment of a debtor's good faith, beginning with the timing of the filing and whether it is "bare bones."  Prior filings and their paths may also inform this initial assessment.  If these factors are not favorable to the debtor, then the debtor's good faith may be called into question.

1

But other factors are also relevant, including what happens next. Has the debtor taken steps to address the substantive and procedural deficiencies? Has the debtor filed or supplemented any missing or incomplete schedules and statements? Did the debtor appear at the Section 341 meeting with the trustee? In a Chapter 13 case, was a plan filed and confirmed, and has the debtor commenced making plan payments? When most or all of these things occur, then the debtor may well have shown that their bankruptcy case was, in fact, filed and pursued in good faith.

### Jurisdiction and Authority To Enter a Final Judgment

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 1334 and 157(a), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). And as this Court has observed, "a request for sanctions arising out of an attorney's conduct in a core proceeding is itself a core proceeding." *Kramer v. Mahia* (*In re Khan*), 488 B.R. 515, 526-27 (Bankr. E.D.N.Y. 2013).

To the same effect, as the Second Circuit has observed:

[A court] clearly ha[s] jurisdiction to impose sanctions irrespective of the status of the underlying case because the imposition of sanctions is an issue collateral to and independent from the underlying case. "[A] federal court may consider collateral issues after an action is no longer pending," including motions for costs, attorney's fees, contempt sanctions, and Rule 11 sanctions because they are "not a judgment on the merits of an action."

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990)).

**Background and Procedural History**

*Ms. Nedd's Chapter 13 Bankruptcy Case*

Some background concerning the matrimonial action and Ms. Nedd's Chapter 13 bankruptcy case is helpful to understand the context for the question before this Court.  On December 23, 2020, Mr. Nedd commenced a divorce proceeding in New York Supreme Court, Kings County, captioned *Marcus Nedd v. Bernadette Nedd*, Index No. 552993/2020 (the "Matrimonial Action").  That case followed a long path in the state court, and, after a series of delays, on September 26, 2022, two days before the trial was set to resume, Ms. Nedd commenced a bankruptcy case in this Court by filing, *pro se*, a voluntary petition for relief under Chapter 13.  *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 1 (the "Petition").

But Ms. Nedd's Petition was incomplete and contained only Official Form 101 and the Debtor's Statement Pursuant to Local Bankruptcy Rule 1073-2(b), affirming there were no "related cases" pending.  *See* Petition.  In Part 6 of Official Form 101, Ms. Nedd stated that her estimated total assets, and her estimated total liabilities, were each in the range of $0-50,000.  Petition at 7.  Other than these estimates, her bankruptcy petition did not set forth any other information as to the value of her assets or liabilities.  *See* Petition.

*Ms. Nedd's Schedules and Statements*

On October 31, 2022, Ms. Nedd, now with the assistance of counsel, filed Schedules A/B through G.  *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 17 (Schedules A/B, C, D, E/F, G).  On Schedule A/B, addressing her real property, she lists "241 Macdonaugh [*sic*] St., Brooklyn, NY 11233" as her property (the "Property").  Schedule A/B at 1.  She identifies the value of the Property as $1,100,000, and the value of her interest in the Property as $374,000.  Schedule A/B at 1.  She does not list any other interest in real property.  Schedule A/B at 1, 9,

10.  Ms. Nedd also schedules $7,300 in personal property, $500 in a Brooklyn Credit Union savings account, and $1,500 in a Brooklyn Credit Union checking account.  Schedule A/B at 2-3.

On Schedule D, addressing claims secured by real property, Ms. Nedd lists a $25,000 claim of Brooklyn Credit Union secured by the Property and a "disputed" $0 secured claim of Mr. Nedd with no collateral specified.  Schedule D at 1-2.  On Schedule E/F, addressing unsecured claims, Ms. Nedd lists no priority creditors, and $12,100 in general unsecured debt.  Schedule E/F at 1-4.

The following day, on November 1, 2022, Ms. Nedd filed Schedules I and J.  *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 19 (Schedules I, J).  On Schedule I, addressing her monthly income, she reports $3,256.93 in gross income from wages as a bus driver and $2,210.35 in monthly take-home pay; $2,000 in "Household Contribution from Cynthia Washington"; $1,150 in "Contributions to Household Expenses from KathyAnn Peters"; and $1,520 in income from "all other sources," for total monthly income of $6,840.35.  Schedule I at 1-3.

According to Ms. Nedd's Schedule J, addressing her monthly expenses, her most significant monthly expenses are in connection with her residence, and include $2,322 for the mortgage, $1,416.50 for utilities, $300 for home insurance, and $400 for property tax.  Schedule J at 1-3.  She lists a total of $5,736.50 in monthly expenses, yielding a monthly net income of $1,103.85.  *Id*.

Also on November 1, 2022, Ms. Nedd filed a Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (the "Official Form 122C-1") and Statement of Financial Affairs (the "SOFA").  *See In re Bernadette Nedd,* Case No. 22-42353, ECF Nos. 18, 21 (Official Form 122C-1, SOFA).  In her Official Form 122C-1, Ms. Nedd states

4

that she receives gross income from employment of $3,006.40 and rental income of $1,520. Official Form 122C-1 at 1.

Ms. Nedd's SOFA, as initially filed, omits income and employment information for the year 2022 and two prior calendar years and does not disclose the pending matrimonial action. SOFA at 2, 4. Some four months later, on February 21, 2023, Ms. Nedd filed an Amended Statement of Financial Affairs adding this information. *In re Bernadette Nedd,* Case No. 22-42353, ECF No. 35 ("Amended SOFA") at 2, 4.

*Proofs of Claim in Ms. Nedd's Bankruptcy Case*

Soon after Ms. Nedd filed her Chapter 13 case, the Court set a general claims bar date in the case of December 5, 2022. *In re Bernadette Nedd,* Case No. 22-42353, ECF entry dated September 26, 2022. In all, three general unsecured claims and two secured claims were filed, in a total amount of $65,252.37. *In re Bernadette Nedd,* Case No. 22-42353, Claims Register. Proof of claim 1-1 filed by Quantum3 Group LLC as agent for Comenity Bank, and proof of claim 2-2 filed by Jefferson Capital Systems LLC, are general unsecured claims totaling $3,742.89. *In re Bernadette Nedd,* Case No. 22-42353, Proof of Claim 1-1, Proof of Claim 2-2. Proof of claim 3-2, proof of claim 4-1, and proof of claim 5-1 were each filed by Brooklyn Federal Credit Union. *In re Bernadette Nedd,* Case No. 22-42353, Proof of Claim 3-2, Proof of Claim 4-1, Proof of Claim 5-1. Proof of claim 5-1 is in the amount of $20,503.08, and $19,439.20 of that amount is identified as secured by a mortgage on unspecified collateral. *See In re Bernadette Nedd*, Case No. 22-42353, Proof of Claim 5-1.

*The Stay Relief Motion*

On October 25, 2022, Mr. Nedd filed a motion for relief from the automatic stay under Bankruptcy Code Section 362(d)(1) in Ms. Nedd's Chapter 13 case, to permit the parties to

5

proceed in the Matrimonial Action. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 24 (the "Stay Relief Motion"). In that motion, he asserts that Ms. Nedd filed her Chapter 13 bankruptcy case two days before trial was set to resume in the Matrimonial Action. Stay Relief Motion ¶¶ 1-2. He also states that that the September 28, 2022, trial date was itself the product of a continuance triggered by Ms. Nedd's last-minute change of counsel. Stay Relief Motion ¶¶ 2, 5. And he states that since the Matrimonial Action began, Ms. Nedd has claimed that she is entitled to a ninety-nine percent share of the marital home, at 241 MacDonough Street in Brooklyn, and that he is entitled to the remaining one percent share. Stay Relief Motion ¶ 3. He also asserts that one year earlier, the Property was valued by an appraiser at $1.75 million, so that when Ms. Nedd stated in her bankruptcy petition that her assets were valued at $0-50,000, she committed fraud. Stay Relief Motion ¶ 4.

Additionally, Mr. Nedd states that on September 28, 2022, in response to Ms. Nedd's dilatory tactics in the Matrimonial Action, including terminating her counsel and filing for bankruptcy, that court entered an interim order granting him a fifty percent interest in the Property. Stay Relief Motion ¶ 5. For all of these reasons and more, Mr. Nedd argues that the automatic stay should be modified to permit the parties to proceed in the Matrimonial Action to determine the equitable distribution of the marital property. Stay Relief Motion ¶ 8.

On January 16, 2023, Ms. Nedd filed opposition to the Stay Relief Motion. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 29 (the "Stay Relief Opp."). Ms. Nedd responds, among other things, that in her Chapter 13 plan, she intends to provide for the equitable distribution interest in the marital property while retaining the marital home. Stay Relief Opp. ¶¶ 8, 14. As she states, "[t]he central issue is structuring equitable distribution matters within a structured payment rather than being harassed into selling her home for the

satisfaction of an inequitable claim premised upon inflated appraisals that the state courts refuse to deal with." Stay Relief Opp. ¶ 14.

On January 17, 2023, the Court held a hearing on the Stay Relief Motion, at which Mr. Nedd and Ms. Nedd, each by counsel, appeared and were heard. *In re Bernadette Nedd,* Case No. 22-42353, ECF entry dated January 17, 2023. At that hearing, the Court granted the Stay Relief Motion in part, and by Order dated January 20, 2023, stated:

> The automatic stay is modified in part to permit Creditor Marcus Nedd to pursue his rights under applicable law in his pending matrimonial trial in the Supreme Court of Kings County under Index No.: 552993/2020, up to the entry of Judgment under Index No.: 552993/2020, with enforcement to be stayed pending further order of this Court.

*In re Bernadette Nedd*, Case No. 22-42353, ECF No. 41 (Stay Relief Order).

On November 20, 2023, the Court held a continued hearing on the Stay Relief Motion, at which Mr. Nedd and Ms. Nedd appeared and were heard. *In re Bernadette Nedd,* Case No. 22-42353, ECF entry dated November 20, 2023. At that hearing, the Court directed the parties to work toward the identification of an appraiser to determine the value of the Property. *Id.* In particular, the Court directed Mr. Nedd to provide Ms. Nedd with three proposed appraisers and directed Ms. Nedd to select one appraiser and an alternate. *Id.* The Court also directed that the cost of the appraiser would be divided between the parties. *Id.*

On December 1, 2023, Mr. Nedd filed a status letter stating that he had sent a list of three appraisers, and that Ms. Nedd had not responded. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 51. And on December 20, 2023, Mr. Nedd filed a second status letter, stating that Ms. Nedd had declined to provide the appraiser with access to the Property, and that a "drive-by" appraisal valuing the property at $1.695 million had been completed instead. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 52.

7

*Ms. Nedd's Chapter 13 Plans*

On January 17, 2023, Ms. Nedd filed her first Chapter 13 plan.  *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 30.  In substance, this plan provided for sixty monthly plan payments of $1,021.10 to the Chapter 13 Trustee, to pay Ms. Nedd's mortgage arrears, her debt to Mr. Nedd, her unsecured debt, and the Chapter 13 Trustee.  *Id.*

Two weeks later, on January 31, 2025, Ms. Nedd filed her first amended plan, adding an "a/k/a" of "Bernadette Gillette" to her name in the plan.  *In re Bernadette Nedd,* Case No. 22-42353, ECF No. 34.  Otherwise, the plan terms were the same.  *Id.*

And two days after that, on February 2, 2025, Ms. Nedd filed a second amended plan, using this District's form plan and, in substance, proposing the same payments to the Chapter 13 Trustee and creditors.  *In re Bernadette Nedd,* Case No. 22-42353, ECF No. 36.  As to Mr. Nedd, no specific payment was proposed.  *Id.*

On May 25, 2023, Ms. Nedd filed a third amended plan.  In substance, this plan provided for eight monthly plan payments of $1,020.10 and fifty-two monthly plan payments of $946.55 to the Chapter 13 Trustee.  In this plan, she proposed the same payment to the Brooklyn Federal Credit Union mortgage arrears, as well as proposing to pursue a loan modification with respect to its claim through this District's loss mitigation program, and proposing a reduced payment to general unsecured creditors.  *In re Bernadette Nedd,* Case No. 22-42353, ECF No. 37.  No payment to Mr. Nedd was specified.  *Id.*

And finally, on June 28, 2023, Ms. Nedd filed her fourth amended, and fifth overall, plan, which provides for fifty-one monthly plan payments of $878.32, proposes substantially the same cure payment and loan modification to address the Brooklyn Federal Credit Union mortgage, a

reduced payment to general unsecured creditors, and no specific treatment for Mr. Nedd. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 39.

*The Chapter 13 Trustee's Motions to Dismiss*

The Chapter 13 Trustee filed two motions to dismiss Ms. Nedd's Chapter 13 bankruptcy case. *In re Bernadette Nedd,* Case No. 22-42353, ECF Nos. 28, 46. On January 11, 2023, the Trustee filed the first motion to dismiss, on grounds, among others, that Ms. Nedd did not file a Chapter 13 plan and begin making plan payments, did not provide a copy of her federal income tax return or transcript for the most recent year, and did not file certain required disclosure documentation. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 28. On February 27, 2023, the Court held a hearing on the first motion to dismiss and, in response to the progress being made in the case, the Chapter 13 Trustee withdrew the motion. *In re Bernadette Nedd,* Case No. 22-42353, ECF entry dated February 27, 2023.

More than eight months later, on October 19, 2023, the Chapter 13 Trustee filed a second motion to dismiss Ms. Nedd's bankruptcy case, on grounds, among others, that she did not file certain required documents, including a statement as to whether she has outstanding court-ordered domestic support obligations, and whether she has filed the applicable tax returns, proof of payment of post-petition mortgage or lease payments, and copies of pay advices. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 46. On November 13, 2023, Ms. Nedd responded to the motion in a sworn statement addressing several of these deficiencies. *In re Bernadette Nedd,* Case No. 22-42353, ECF No. 48.

On January 3, 2024, Ms. Nedd filed a motion seeking the voluntary dismissal of her Chapter 13 case, citing the financial difficulty of litigating simultaneously in bankruptcy court and in the Matrimonial Action. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 53 (the

"Debtor Mot. to Dismiss").  In her motion, Ms. Nedd states, in substance, that she filed her

Chapter 13 case in good faith, that "the purpose of [her] petition was to seek reorganization of

her residential mortgage, prevent an imminent foreclosure sale and seek [to] restructure of a

potential debt and to preserve [the Property]."  Debtor Mot. to Dismiss ¶ 4.  She also states that

she filed a Notice of Appeal in the Matrimonial Action.  Debtor Mot. to Dismiss ¶ 5.  And Ms.

Nedd explains that during her case, she appeared at the Section 341 meeting of creditors, filed all

documents as requested by the Chapter 13 Trustee, and made all pre-confirmation plan payments

to the Chapter 13 Trustee.  Debtor Mot. to Dismiss ¶¶ 6-7.

Ms. Nedd also states that the costs that she was likely to incur in connection with the

appeal in the Matrimonial Action would be more than $15,000, and that it would not be possible

for her both to pursue that appeal and to continue with the bankruptcy case and related adversary

proceedings.  Debtor Mot. to Dismiss ¶¶ 8-13.  And her counsel noted that while he "believe[s]

in the merits of the appeal and" the bankruptcy case, and while there is "equity available in the

property; . . . neither [he nor the Debtor] have the time to exercise that option [i.e. pursuing the

bankruptcy case] at this moment."  Debtor Mot. to Dismiss ¶¶ 11, 13.  Her counsel also notes

that he has been largely uncompensated in the bankruptcy case and cannot continue to represent

Ms. Nedd under such circumstances.  Debtor Mot. to Dismiss ¶¶ 10, 12.

And that same day, on January 3, 2024, in response to Ms. Nedd's Motion to Dismiss, the

Court entered an Order dismissing the Chapter 13 bankruptcy case.  *In re Bernadette Nedd*, Case

No. 22-42353, ECF No. 54 (the "Dismissal Order").

*This Adversary Proceeding*

On November 22, 2022, Mr. Nedd commenced this adversary proceeding by filing a

"Complaint To Determine Dischargeability And In Objection to Discharge [11 U.S.C. §1307]".

ECF No. 1 (the "Complaint").  In the Complaint, Mr. Nedd states "Debtor Nedd has engaged in fraud and deceit that mandates dismissal of her bankruptcy petition without discharge, or, alternatively, that her debt to [him] be deemed non-dischargeable."  Complaint ¶ 1.  The Complaint sets forth seven grounds, or claims for relief, as follows:

1.  That Bernadette's case be dismissed pursuant to §1307, alleging fraudulent misrepresentation on Bernadette's bankruptcy petition: Bernadette estimated her assets to be $50,000, even though in the pending matrimonial action she took the position that she has a 99% interest in (her husband 1%) the marital residence, which is worth as much as $1,750,000.

2.  That the case be dismissed pursuant to §1307, alleging that Bernadette's application for bankruptcy was only intended to delay the pending divorce action which had been ongoing since December 23, 2020.

3.  That the case be dismissed pursuant to §1307, citing several administrative case deficiencies pending at the time, including §521 deficiencies and the failure to file a plan within 14 days of filing the petition.

4.  That the case be dismissed pursuant to §1307, because Bernadette's Statement of Financial Affairs states she received no income during the year or previous two calendar years, which "contradicts" a Statement of Net Worth filed in the matrimonial action, and dated March 30, 2022, indicates that she receives $1,520.00 a month from her renting the Macdonough Street property.

5.  That the case be dismissed pursuant to §1307, because in part 4, line 31, of Schedule A/B, Debtor indicates she has no interests in insurance policies, while the Statement of Net Worth states that she pays $203.00 monthly or $2,444.00 yearly for homeowner's/renter's insurance.  "This is yet another false statement."

6.  That the case be dismissed pursuant to §1307, based on the "disingenuous" representation on Schedule C that the current value of the portion of the 241 Macdonough Street property that she owns is only $374,000.00, which contradicts position in matrimonial proceeding that she has a 99% stake in the asset.

7.  That the case be dismissed pursuant to §1307, because of the "outright lie" on Part 4, line 9 of the Statement of Financial Affairs, in which Bernadette indicated she was not a party to any lawsuit or court proceeding within 1 year of filing for bankruptcy.

11

Complaint ¶¶ 1-7.

In addition to dismissal of the case, the Complaint also seeks "an award of attorney's fees as allowable by law in an amount the court determines to be reasonable; . . . costs of suit herein incurred; and [f]or such other and further relief as this Court deems just and proper."  Complaint at p. 12.

On February 22, 2022, Ms. Nedd filed an answer.  ECF No. 4 (the "Answer").  In her Answer she denies, in substance, the allegations that she has proceeded fraudulently or in bad faith in her bankruptcy case.  Answer ¶¶ 3-5.  She also responds that, to the extent her filings before retaining counsel contain conflicting statements or omissions, she did not take appropriate care in preparing her petition.  Answer ¶ 7.  And she states that counsel has since attempted to cure these deficiencies by submitting new schedules and statements, *id.*; that Mr. Nedd's claim should be subject to a setoff for his non-contribution to household repairs, mortgage payments advanced, and damages for assault and battery during marriage, Answer ¶ 8; that his claim is dischargeable, Answer ¶ 9; that her grant of a one percent interest in the Property to Mr. Nedd was for the "purpose of,  immigration reasons," and she never intended to deliver, or delivered, a deed conferring a greater interest in the Property, Answer ¶¶ 11-12.

As noted above, on January 3, 2024, the Court entered an Order granting Ms. Nedd's Motion to Dismiss and dismissing her Chapter 13 bankruptcy case.  *See* Dismissal Order.  In light of that dismissal, on March 15, 2024, the Court issued an Order to Show Cause Why Adversary Proceeding Should Not Be Dismissed Without Prejudice in Light of the Dismissal of the Chapter 13 Case.  ECF No. 10.  Mr. Nedd responded by filing this motion, seeking, in substance, that Ms. Nedd be sanctioned in the form of an award of attorneys' fees of $78,288, for

12

filing her bankruptcy case in bad faith.  ECF No. 12 (the "Opposition to Dismissal" or "Opp. to Dismissal").  He also asked the Court not to dismiss this action until ruling on his request.  *Id.*

*Mr. Nedd's Opposition to Dismissal*

On May 30, 2024, Mr. Nedd filed the Opposition to Dismissal.  Opp. to Dismissal.  He states that, "[a]s a result of Defendant's fraudulent petition, Plaintiff has been forced to incur significant legal fees in these bankruptcy proceedings, only for the Defendant to voluntarily withdraw her petition on January 3, 2024, on the morning of an in-person court appearance."  Opp. to Dismissal ¶ 1.  Mr. Nedd acknowledges that his request for dismissal of the bankruptcy case is "now moot" due to the Debtor's voluntary dismissal, but asserts that he nevertheless "should be entitled to attorney's fees and for the costs of suit herein incurred."  Opp. to Dismissal ¶ 3.  And he indicates that amount is "approximately $78,288 as of April 12, 2024."  *Id*.  That is, in substance, Mr. Nedd seeks an award of attorney's fees and costs incurred in the context of these bankruptcy proceedings before they are brought to a close by the dismissal of the adversary proceeding.  *Id.*

Mr. Nedd also points to many of the same grounds set forth in the Complaint as a basis for his request for fees.  *See generally* Opp. to Dismissal.  These include that Ms. Nedd's petition and other pleadings were fraudulent, and that they were filed on the eve of a continued trial date in the Matrimonial Action in order to delay that proceeding.  Opp. to Dismissal ¶¶ 4-7.  He also asserts that Ms. Nedd "had stated on the record during a Meeting of Creditors that the reason why she filed for bankruptcy was because she was going through a divorce."  Opp. to Dismissal at pp. 7-8.  Mr. Nedd states he has incurred excessive legal fees by filing the Stay Relief Motion and an adversary proceeding, and by attending several in-person and telephonic court hearings and meetings of creditors.  Opp. to Dismissal ¶¶ 3, 8.  And he notes that the $78,288 is sought

13

strictly for work done in this bankruptcy case between September 28, 2022, and April 13, 2024.
Opp. to Dismissal ¶ 9.

Mr. Nedd argues that Ms. Nedd's asserted bad faith conduct in the Matrimonial Action is demonstrated by the $75,000 awarded in that action, and that award remains unpaid. *Id.* He notes that in making the award, the court there observed:

> [Ms. Nedd's] act of firing two of her three attorneys on the eve of continued trial and then filing for Federal Bankruptcy protection in the midst of trial were dilatory in nature and were committed solely to delay the trial and prevent this court from issuing a decision on Equitable Distribution.

Opp. to Dismissal ¶ 9 (citing Opp. to Dismissal, Exh. I at 4 (State Court order awarding fees of $75,000)).

Mr. Nedd also points to Ms. Nedd's failure to comply with the Judgment of Divorce, which directs that the Marital Residence be sold and the proceeds be split between the parties, with the $75,000 award to be taken from her share of the sale proceeds. Opp. to Dismissal ¶ 9. Finally, he seeks reimbursement for one-half of the costs of obtaining an appraisal of the Property as ordered by this Court. Opp. to Dismissal ¶ 10. And he notes that as he is addressing these legal matters in the Matrimonial Action and the bankruptcy court, he is also confronting a recent stage four cancer diagnosis. Opp. to Dismissal at p. 8.

*Ms. Nedd's Cross Motion for Sanctions*

On June 4, 2024, Ms. Nedd filed a Cross Motion for Sanctions and Opposition to Brian Perskin's Motion for Legal Fees in response to Mr. Nedd's Motion to Dismiss and request for attorney's fees (the "Cross Motion" or "Cross Mot."). ECF No. 15.[1]

---

[1] Ms. Nedd's June 4, 2024, Cross Motion filing supersedes a substantially similar motion filed on May 30, 2024. Cross Motion for Sanctions and Opposition to Brian Perskin's Motion for Legal Fees, ECF No. 13. That first filing will not be addressed further here.

In the Cross Motion, Ms. Nedd states that any errors in her schedules were inadvertent and were corrected in her amended schedules.  Cross Mot. at p. 1.  Next, she notes that Mr. Nedd did not file a motion to dismiss, objection to confirmation, or proof of claim in her bankruptcy case, but instead commenced this adversary proceeding, in which he has appeared just three times.  Cross Mot. at p. 2.  And she points out that she has appealed from the orders entered in the Matrimonial Action, including the order that is the subject of Mr. Nedd's motion for contempt.  Cross Mot. ¶ 8.

In addition, Ms. Nedd responds as to the question of the value of the Property.  She points out that Mr. Nedd submitted a valuation based on a "drive by" assessment, rather than an appraisal.  Cross Mot. ¶ 11.  By contrast, she responds, her Cross Motion includes an appraisal as of April 2024 that values the Property at $1,250,000.  Cross Mot. ¶ 11 (citing Exh. 3.).

Ms. Nedd also responds that she determined the value of her interest in the Property, which is her homestead, based on, among other considerations, the assumptions that her daughter, Kattyann Peters, who is on the mortgage, has an interest in the Property; and that her sister, Cynthia Washington, has an equitable interest in the Property arising from the ten years that she resided there.  Cross Mot. ¶ 12.  She also notes that she and Ms. Washington are presently contesting their respective interests in the Property in state court.  *Id*.  Based on all of these considerations, Ms. Nedd asserts, $374,000 was, at that time, a reasonable estimate of the value of her interest in the Property.  *Id*.

And finally, Ms. Nedd questions whether Mr. Nedd's Opposition to Dismissal is, in substance, an attempt to amend the Complaint.  Cross Mot. ¶¶ 14-15.  Ms. Nedd requests an award of her costs in connection with defending this action.  Cross Mot. ¶ 3.

And on July 26, 2024, Ms. Nedd withdrew the Cross Motion by filing a letter to that

effect.  ECF No. 16.  The withdrawal of the Cross Motion was "so ordered" by the Court on November 26, 2024.  ECF entry dated November 26, 2024.  In light of the withdrawal of the Cross Motion, the Court considers Ms. Nedd's arguments made there as, in substance, opposition to Mr. Nedd's request for an award of attorney's fees and costs.

*Mr. Nedd's Memorandum in Support of His Request for Attorney's Fees*

On September 11, 2024, Mr. Nedd filed a Memorandum in Support of the Opposition (the "Memorandum in Support" or "Mem. in Support") and set forth the legal basis for his attorney's fees request.  ECF No. 21.  *See* August 14, 2024, hearing docket entry (stating that the "Movant may supplement motion by 9/11/2024.  Debtor may supplement opposition by 10/9/2024").

In the Memorandum in Support, Mr. Nedd cites three sources of law in support of his request.  *See generally* Mem. in Support.  These are Bankruptcy Code Section 523(a)(2)(A), the Court's inherent authority, and Judiciary Code Section 1927.  Mem. in Support ¶¶ 5, 23-24.

Bankruptcy Code Section 523(a)(2)(A).  First, Mr. Nedd cites to Bankruptcy Code Section 523(a)(2)(A), which addresses the dischargeability of a debt arising from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

Mr. Nedd notes the following elements of a Section 523(a)(2)(A) claim: (1) the debtor made a false representation; (2) that at the time made, the debtor knew the statement was false; (3) the misrepresentation was made with an intent to deceive; (4) the creditor reasonably relied on that misrepresentation; and (5) the creditor was damaged as a result of the misrepresentation. Mem. in Support ¶ 5.

As to the first three of these elements, Mr. Nedd argues that Ms. Nedd did not disclose all of her assets in her bankruptcy petition and schedules. Mem. in Support ¶¶ 6-10. He also points to the timing of her filing her bankruptcy case, and argues that her petition was filed in bad faith with intent to deceive and delay on the eve of a continued trial date in the Matrimonial Action. Mem. in Support ¶ 11. And Mr. Nedd notes that the Trustee filed two motions to dismiss her bankruptcy case, and that in the Matrimonial Action, the state court has already awarded attorney's fees against her, among other arguments. Mem. in Support ¶¶ 12, 16.

As to the fourth element, Mr. Nedd argues he reasonably relied on these representations, by filing a stay relief motion, adversary proceeding, and otherwise litigating to protect his interests in this Court. Mem. in Support ¶ 13, 16. And as to the fifth element, he asserts that he has been damaged in the amount of the legal fees he has incurred for the work done in the bankruptcy matter between September 28, 2022, and April 13, 2024, totaling $78,288. Mem. in Support ¶ 15, 21. Finally, Mr. Nedd notes that he should be reimbursed for one-half of the cost of the appraisal, or $950, amounting to $475, as agreed by the parties and directed by the Court. Mem. in Support ¶ 17.

The Court's Inherent Authority. Mr. Nedd also invokes the Court's inherent authority to sanction bad faith conduct as a basis for his request for an award of attorney's fees. Mem. in Support ¶¶ 22-23. He points to the Supreme Court's decision in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), and notes that there, the Court stated that all federal courts, as judicial bodies, are vested with the inherent power to sanction for bad faith litigation and conduct. Mem. in Support ¶¶ 22-23 (citing *Chambers*, 501 U.S. at 43, 47). And Mr. Nedd argues that federal courts may rely on this power and their inherent authority to sanction fraud upon the court, abuse of litigation process, and other bad faith conduct. Mem. in Support ¶ 23. He observes that a

finding of bad faith or fraud "is necessary for a court to invoke its inherent powers to impose sanctions."  Mem. in Support ¶ 23 (citing *Chambers*, 501 U.S. at 43, 47).

Judiciary Code Section 1927.  Mr. Nedd points to Judiciary Code Section 1927 as an additional alternative basis for his request for a sanction in the form of attorney's fees and costs. Mem. in Support ¶ 24.  That Section states, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  *See* Mem. in Support ¶ 24 (citing *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)).  Mr. Nedd also asserts that although the "Defendant has voluntarily withdrawn her bankruptcy petition . . . the Plaintiff opposes the dismissal of the adversary proceeding . . . because he has incurred many expenses by the fraudulent filing of the Defendant's petition and should be compensated for the attorney fees as a result."  Mem. in Support ¶ 26.

And finally, Mr. Nedd cites Bankruptcy Rule 7001, noting that the relief he seeks is available in an adversary proceeding.  Mem. in Support ¶ 25.  He states, "[t]he Plaintiff is also entitled to have his legal fees in the bankruptcy proceeding paid for by the Defendant pursuant to Bankruptcy Rule 7001, which indicates that a party can secure compensatory sanctions by means of an adversary proceeding."  *Id.*

## Discussion

### *Attorney's Fees and the "American Rule"*

The starting point for considering a request for an attorney's fee award is the general rule, sometimes referred to as the "American Rule," that in the absence of a fee-shifting contract

18

provision or statute, or a determination by the court, the parties to a litigation – win or lose – bear their own attorney's fees and costs.

As the Second Circuit has explained, "[t]he so-called 'American Rule' is the background against which all discussion of shifting the burden of attorneys' fees must be viewed.  This rule is that '[i]n the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'"  *Oliveri v. Thompson*, 803 F.2d 1265, 1271 (2d Cir. 1986) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247 (1975)), *cert. denied*, *County of Suffolk v. Graseck*, 480 U.S. 918 (1987).

But that does not mean that an award of sanctions, benchmarked or measured against the attorney's fees and costs that the aggrieved party has incurred, is somehow prohibited.  Instead, it must be considered in the framework of the grounds that permit courts to award sanctions, and in light of the facts and circumstances of the case and situation.

*The Standard for Awarding Sanctions*

There are certain threshold considerations in assessing a request for an award of sanctions, whatever the source of the court's authority and whether in the form of an attorney's fee award or something else.  As this Court has observed:

> Sanctions, under any authority, should not be imposed lightly.  They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy.  They should issue "narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law."

*In re Khan*, 488 B.R. at 528 (quoting *Palagonia v. Sachem Cent. Sch. Dist.*, 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010)) (quotation marks and citation omitted).

As the Second Circuit has observed, "[f]or purposes of determining whether to impose sanctions, we analyze the conduct of parties and their attorneys separately."  *Ransmeier*, 718 F.3d at 71.  "'The rule that the sins of the lawyer are visited on the client does not apply in the

19

context of sanctions,' and we therefore must 'specify conduct of the client herself that is bad enough to subject her to sanctions.'" *Ransmeier*, 718 F.3d at 71 (quoting *Gallop v. Cheney*, 660 F.3d 580, 584 (2d Cir. 2011)).

Here, Mr. Nedd seeks an award of his attorney's fees and costs on three alternative grounds:  Bankruptcy Code Section 523(a)(2)(A), the Court's inherent authority, and Judiciary Code Section 1927.  And it is fair to say that his focus is on Ms. Nedd's conduct, rather than the conduct of her attorney.  The Court considers these grounds in turn.

*Whether Mr. Nedd Has Shown that He Is Entitled to an Award of Attorney's Fees and Costs Pursuant to Bankruptcy Code Section 523(a)(2)(A)*

The Court first considers whether Mr. Nedd has shown that he is entitled to an award of attorney's fees and costs pursuant to Bankruptcy Code Section 523(a)(2)(A).  Bankruptcy Code Section 523(a)(2)(A) addresses the dischargeability of a particular debt in the context of a bankruptcy case.  A claim under this Section may be brought by a creditor where a debtor receives "[a] discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b)," but the creditor seeks to exclude its claim from the scope of that discharge because the claim arises from "a[] debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

Courts, including this Court, have defined a series of elements that a plaintiff must show to succeed on a Section 523(a)(2)(A) claim.  These are:

> [F]irst, that the debtor made a false representation; second, that at the time it was made, the debtor knew it was false; third, that the debtor made the representation with the intent of deceiving the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained loss or damages that was proximately caused by the false representation.

*Citibank (South Dakota), N.A. v. Spradley* (*In re Johnson*), 313 B.R. 119, 127 (Bankr. E.D.N.Y. 2004).

And if a Section 523(a)(2)(A) claim is successful, then the plaintiff's claim against the debtor will be excluded from that debtor's discharge. But the question of an award of sanctions or attorney's fees or costs is not likely to be part of the picture.

To be sure, courts have considered discuss whether debts, such as attorney fee awards, that are ancillary to a debt that is nondischargeable, may themselves be nondischargeable. *See*, *e.g.*, *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998) (holding that a bankruptcy court award of attorney fees and treble damages pursuant to the New Jersey Consumer Fraud Act was nondischargeable, since it arose from a debt, rent collected in excess of a city ordinance, that itself was obtained by fraud). But here, there has been no finding of a nondischargeable debt, and Ms. Nedd is not receiving a discharge.

Here, the record shows that Mr. Nedd has not established that he is entitled to an award of attorney's fees and costs under Section 523(a)(2)(A), for several reasons. At the outset, the relief afforded by Section 523(a)(2)(A) addresses the dischargeability of a debt. It is not an independent basis to seek an award of attorney's fees, no matter how egregious the circumstances. If the requirements for relief are met, then the debt is excluded from the debtor's discharge. But a standalone award of attorney's fees is not within the scope of Section 523(a)(2)(A) or the available relief.

Next, even if Mr. Nedd's request for relief pursuant to Section 523(a)(2)(A) could somehow be construed to be a request that, for example, Ms. Nedd's debts to him be excluded from her discharge, here too the record would come up short. This is because Ms. Nedd's bankruptcy case has been dismissed, and a discharge was not entered. *See* Dismissal Order.

21

That is, the question of the discharge of a particular debt is simply not a question to be addressed in her bankruptcy case, because the case did not progress to that point, and a discharge will not be entered.

And finally, at some point down the road, in a future bankruptcy case that Ms. Nedd might pursue, where the question of the entry of a discharge might arise and Mr. Nedd might seek to have a debt owed to him declared to be outside the scope of that discharge, Mr. Nedd may again pursue relief under Section 523(a)(2)(A). But again, that is not the question presented here.

For these reasons, and based on the entire record, the Court finds and concludes that Mr. Nedd has not shown that he is entitled to an award of attorney's fees and costs under Bankruptcy Code Section 523(a)(2)(A).

### Whether Mr. Nedd Has Shown that He Is Entitled to an Award of Attorney's Fees and Costs Pursuant to the Court's Inherent Authority

The Court next considers whether Mr. Nedd has shown that he is entitled to an award of attorney's fees and costs pursuant to the Court's inherent authority. As this Court and others have found, "courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *In re Khan*, 488 B.R. at 530 (quoting *Chambers*, 501 U.S. at 43). *See In re Truong*, 2008 WL 1776227, at *6 (Bankr. S.D.N.Y. Apr. 14, 2008) (citing this standard); *Schlaifer Nance*, 194 F.3d at 336 (same).

As this Court has also noted, and "as a respected commentator has observed, '[t]his inherent authority is essential to the administration of justice, and exists in addition to sanctions available under specific statutes or Rules.'" *In re Khan*, 488 B.R. at 531 (quoting 3 James Wm. Moore et al., Moore's Federal Practice § 1690 (3d ed. 1997)).

22

Of course, this inherent authority does not mean that courts act without a framework for their determinations when sanctions are sought – including sanctions in the form of an attorney's fee award.  Instead, as the Second Circuit has counseled:

> A court must justify the sanction in view of the specific source of its authority – especially when the source is inherent power.  Inherent power is constrained: it requires "caution" and notice before use; and it is a last resort for when an express authority is not "up to the task."

*PHH Mortg. Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503, 516 (2d Cir. 2021) (quoting

*Chambers*, 501 U.S. at 47).

The Second Circuit has described the standard for imposing sanctions pursuant to the

Court's inherent authority as follows:

> "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  *Schlaifer Nance*, 194 F.3d at 336; *see also id*. at 337 (holding that a claim is "entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.") (internal citations omitted).  Although both findings "must be supported by a high degree of specificity in the factual findings," *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009), "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay,'" *Schlaifer Nance*, 194 F.3d at 336 (citation omitted).

*Enmon v. Prospect Capital Corp*., 675 F.3d 138, 143 (2d Cir. 2012).

As to the question of bad faith, the Second Circuit has explained:

> When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in "the . . . conduct of the litigation," which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith.  But, when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.

23

*United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000) (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973) (citations omitted)).  *See Worms v. Rozhkov* (*In re Markus*), 78 F.4th 554, 565-66 (2d Cir. 2023) (quoting *Seltzer*, 227 F.3d at 39-42) (concluding that a bankruptcy court did not abuse its discretion in invoking its inherent power to impose civil contempt sanctions upon an attorney for failing to comply with discovery orders).

The range of circumstances that may lead to sanctions under the court's inherent power is broad.  As the Second Circuit has observed:

> An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons.  "[B]ad faith" may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.

*Oliveri*, 803 F.2d at 1272 (quotation marks omitted).

At the same time, the Court's inherent authority does not generally reach beyond the matters that are before it.  As one court has found:

> "The Court recognizes that it can not sanction [the attorney] for conduct that occurred in other courts.  The background of litigation in other courts as set forth above is relevant, however, to the question of [the attorney's] good faith, or lack of good faith, in connection with the filing of the pleadings and motions in this court."

*In re Galgano*, 358 B.R. 90, 105 (Bankr. S.D.N.Y. 2007) (alteration in original) (quoting *Galonsky v. Williams*, 1997 WL 759445, at *7 (S.D.N.Y. 1997)).

More generally, as the Supreme Court has noted, "the inherent power . . . is both broader and narrower than other means of imposing sanctions . . . whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses."  *Chambers*, 501 U.S. at 46.

And there is no threshold number of events that is necessary for sanctions to be warranted – one may be enough, and many may fall short, depending on the facts and circumstances.  As

the Second Circuit noted, "the effect of and number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether – and, perhaps more importantly, what – sanctions are warranted." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (emphasis omitted).

In addition, in considering the appropriate remedy when sanctions in the form of an attorney's fee award are warranted, courts tailor the remedy to the facts and circumstances of the situation. As one example, and as the Supreme Court has held, courts apply a "but-for test" when assessing an award of attorney's fees: "[t]he complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108-09 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). As the Supreme Court explained:

> [T]rial courts undertaking that task "need not, and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is). "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." The court may decide, for example, that all (or a set percentage) of a particular category of expenses – say, for expert discovery – were incurred solely because of a litigant's bad-faith conduct. And such judgments, in light of the trial court's "superior understanding of the litigation," are entitled to substantial deference on appeal.
>
> . . . [I]f a plaintiff initiates a case in complete bad faith, so that every cost of defense is attributable only to sanctioned behavior, the court may again make a blanket award.

*Goodyear Tire & Rubber Co.*, 581 U.S. at 110-11 (citations omitted).

And finally, "[t]he imposition of sanctions pursuant to a court's inherent authority is truly discretionary." *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). "'Because the court's inherent power to impose sanctions is discretionary, the court is not required to sanction a party or attorney even if it has determined that some wrongdoing has occurred.'"

*Yukos Capital*, 977 F.3d at 235 (quoting *Murray v. City of Columbus*, 534 F. App'x 479, 485 (6th Cir. 2013)).

Here, the record shows that the parties' path to the bankruptcy court and these proceedings has been long, contentious, and expensive.  There has already been one award of attorney's fees to Mr. Nedd as a sanction in the Matrimonial Action, in the amount of $75,000, and that amount may well remain unpaid.  In imposing that sanction, the state court found:

> [Ms. Nedd's] act of firing two of her three attorneys on the eve of continued trial and then filing for Federal Bankruptcy protection in the midst of trial were dilatory in nature and were committed solely to delay the trial and prevent this court from issuing a decision on Equitable Distribution.

Opp. to Dismissal ¶ 9 (citing Opp. to Dismissal, Exh. I at 4 (State Court order awarding fees of $75,000)).

And here, the record also shows that the facts and circumstances surrounding the commencement of Ms. Nedd's bankruptcy case in this Court are consistent with the state court's description.  That is, when Ms. Nedd filed her bankruptcy case in this Court – *pro se* – it was incomplete and appears to have been strategically timed to interfere with the progress of trial in the Matrimonial Action.  Mr. Nedd points to this as an indication that, in substance, this bankruptcy case was "without a colorable basis" and filed in "bad faith."  *See Schlaifer Nance*, 194 F.3d at 336.

But that is not the end of the story here, for several reasons.

At the outset, the record here shows that on September 26, 2022, Ms. Nedd, acting without a lawyer, commenced a Chapter 13 bankruptcy case by filing the Petition.  *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 1 (Petition).  Ms. Nedd's bankruptcy case was incomplete in many respects.  It also appears to have been inaccurate, in that Ms. Nedd stated that her estimated total assets and her estimated total liabilities were each in the range of $0-

$50,000. Petition at 7. This was not an auspicious start to the case, to be sure.

Next, just over one month later, on October 31, 2022, Ms. Nedd, now represented by bankruptcy counsel, filed Schedules A/B through G, identified the Property as an asset with a value of $1,100,000, and valued her interest in the Property at $374,000. *See* Schedule A/B at 1. In her bankruptcy schedules, Ms. Nedd also listed her property, including personal property and bank accounts, and her secured and unsecured debt. *See* Schedule D at 1-2; Schedule E/F at 1-4. And she identified a "disputed" secured claim valued at $0 owed to Mr. Nedd. *See* Schedule D at 2.

The following day, on November 1, 2022, again with the assistance of counsel, Ms. Nedd filed Schedules I and J, showing her income and expenses. *See* Schedule I at 1-3; Schedule J at 1-3. On Schedule I, Ms. Nedd listed her monthly income including her wages as a bus driver, contributions to the household expenses from Cynthia Washington and KathyAnn Peters, and income from "all other sources," for a total monthly income of $6,840.35. *See* Schedule I at 1-3. And on Schedule J, Ms. Nedd listed her monthly expenses, including expenses associated with her residence totaling some $4,438, among other expenses, for total monthly expenses of $5,736.50. *See* Schedule J at 1-3.

That is, here, the record shows that when it was filed on September 26, 2022, Ms. Nedd's Chapter 13 bankruptcy case appears to have been strategically timed to delay the proceedings in the Matrimonial Action. And her case was woefully incomplete at the outset. But the record also shows that Ms. Nedd and her newly retained bankruptcy counsel took steps to address those deficiencies and did so within just a few weeks of the commencement of the case.

As to these matters, the Court is satisfied that Ms. Nedd's bankruptcy case, including the steps that she took soon after the case was commenced to retain counsel and address the

deficiencies, was not "without a colorable basis" or "brought in bad faith." *See Schlaifer Nance*, 194 F.3d at 336. And viewed in the light of these steps, this Court cannot agree that Ms. Nedd was "dilatory," as Mr. Nedd asserts.

Another question is the value of the Property as set forth by Ms. Nedd in her bankruptcy filings. And here again, the record shows that when she filed her bankruptcy case, Ms. Nedd did not include the Property in her estimate of the value of her assets. *See* Petition at 7. This, too, was not an auspicious start to the case. Mr. Nedd points to this as another indication that, in substance, this bankruptcy case was "without a colorable basis" and filed in "bad faith." *See Schlaifer Nance*, 194 F.3d at 336.

But here as well, this is not the end of the story. The record shows that within a few weeks, Ms. Nedd retained counsel and filed Schedule A/B, indicating a value for the Property of $1,100,000 and a value of her interest in the Property of $374,000. *See* Schedule A/B at 1. She also filed Schedule C, Schedule D, Schedule E/F, and Schedule G. The record further shows that Ms. Nedd later obtained an appraisal of the Property showing a slightly higher value of $1,250,000. Cross Mot. ¶ 11, Exh. 3. And she explains that she estimated the value of her interest at $374,000 by allocating the value among herself, her daughter Kattyann Peters, and her sister Cynthia Washington. Cross Mot. ¶ 12. Ms. Nedd states that Ms. Peters has "an interest in the Property and is on the mortgage," while Ms. Washington has "has an equitable interest in the property from over the 10 years that she resided there." *Id.*

As to the question of the value of the Property and Ms. Nedd's interest in it, here as well, the Court concludes that Ms. Nedd's bankruptcy case, including the steps that she took soon after the case was commenced to retain counsel and file the relevant schedules identifying the Property and the value of her interest in it, was not "without a colorable basis" or "brought in bad

faith." *See Schlaifer Nance*, 194 F.3d at 336.  Instead, Ms. Nedd identifies grounds to support the value of the interest that she claims in the Property, including that her daughter and sister had potential equitable claims or interests in the Property.  Cross Mot. ¶¶ 11-12; State Court Decision at 21, 25.  To be sure, she could have done so sooner, and her claims and valuation may not ultimately be persuasive.  But that is very different from grounds to conclude that Ms. Nedd or her counsel proceeded in bad faith here with respect to the value of the Property.

Finally, the Court considers whether Mr. Nedd has established grounds for sanctions under the Court's inherent authority on grounds that Ms. Nedd's filing of her Chapter 13 bankruptcy case, viewed in the context not only of the record of this case but also the Matrimonial Action, amounts to sanctionable bad faith.

Mr. Nedd argues that a finding of bad faith and sanctions are warranted because, he asserts, Ms. Nedd's bankruptcy case was made solely to delay the Matrimonial Action and in bad faith, rather than to address her debts under the Bankruptcy Code.  *See* Opp. to Dismissal ¶¶ 7-11.  He points to the findings in the Matrimonial Action that "[Ms. Nedd's] act of firing her three attorneys on the eve of continued trial and then filing for Federal Bankruptcy protection in the midst of trial were dilatory in nature and were committed solely to delay the trial and prevent this Court from issuing a decision on equitable distribution."  Opp. to Dismissal ¶ 9 (citing Opp. to Dismissal, Exh. I at 4 (State Court order awarding fees of $75,000)).  And of course, the record of Ms. Nedd's Chapter 13 case shows that she ultimately requested and obtained the voluntary dismissal of her Chapter 13 case.  *See* Debtor Mot. to Dismiss; Dismissal Order.

Ms. Nedd responds that she filed her Chapter 13 case to obtain the protection of the automatic stay and an opportunity to attempt to refinance her mortgage and possibly pursue an appeal of the State Court Decision.  *See* Debtor Mot. to Dismiss ¶¶ 4-5.  As she states:

> The purpose of the Debtor's petition was to seek reorganization of her residential mortgage, prevent an imminent foreclosure sale and seek restructure of a potential debt and to preserve her real property known as 241 Macdonough St., Brooklyn, NY emanating from a legal proceeding in the Kings County Supreme Court in the case of *Marcus Nedd -v- Bernadette Nedd* with *Index No.: 552993/2020*.

Debtor Mot. to Dismiss ¶ 4.

As a threshold matter, this Court declines the invitation to review and assess Ms. Nedd's conduct in the Matrimonial Action, including matters that were relied upon by the state court in that action to impose a sanction and fee award, to determine whether Ms. Nedd has proceeded in good faith in her bankruptcy case here. *See In re Galgano*, 358 B.R. at 105 (quoting *Galonsky*, 1997 WL 759445, at *7 (observing that "[t]he Court recognizes that it can not sanction [the attorney] for conduct that occurred in other courts" (alteration in original)).

At the outset, and as several courts have found, when a debtor files for bankruptcy protection on the eve of a foreclosure sale, or to permit a state court appeal to proceed, it is not necessarily appropriate to conclude that the debtor is proceeding in bad faith. As the Second Circuit has observed, "[f]irst, the automatic stay 'provides the debtor with a breathing spell from his creditors.'" *Shugrue v. Air Line Pilots Ass'n* (*In re Ionosphere Clubs, Inc.*), 922 F.2d 984, 989 (2d Cir. 1990) (quotation marks omitted) (quoting *Teachers Ins. & Annuity Ass'n of America v. Butler*, 803 F.2d 61, 64 (2d Cir. 1986)).

And that breathing spell may well include bringing other pending matters into the bankruptcy proceeding or, at a minimum, placing a pause on those other matters to permit the bankruptcy case to progress. As the Second Circuit observed, "the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs*, 922 F.2d at 989.

30

As one bankruptcy court observed, several factors may be relevant to the question of whether a debtor has proceeded in bad faith when the bankruptcy filing causes an appeal to be delayed:

> Among the factors considered in deciding whether a debtor has filed a bad faith bankruptcy case because he is attempting to use a bankruptcy filing to prosecute a state court appeal while the bankruptcy stay prevents the creditor/appellee from exercising its state court rights are:
>
> Whether the debtor intends to pursue an effective reorganization within a reasonable period of time, or whether the debtor is unwilling or unable to propose a meaningful plan until the conclusion of the litigation.

*In re Soppick*, 516 B.R. 733, 747 (Bankr. E.D. Pa. 2014) (quoting *In re Mense*, 509 B.R. 269, 280 (Bankr. C.D. Cal. 2014)).  And as the Collier treatise states, "[i]t seems clear that a debtor who simply seeks to benefit from the provisions of the statute should rarely, if ever, be found to be lacking in good faith for that reason."  8 Collier on Bankruptcy ¶ 1307.04[10] at 1307-23 (Richard Levin & Henry J. Sommer eds., 16th ed.).

"[A] good faith determination requires a bankruptcy court to 'inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner.'"  *Johnson v. Vanguard Holding Corp.* (*In re Johnson*), 708 F.2d 865, 868 (2d Cir. 1983) (quoting *Goeb v. Heid* (*In re Goeb*), 675 F.2d 1386, 1390 (9th Cir. 1982).  Viewed another way, many bankruptcy cases are filed on the eve of an event – but that does not mean that the case is filed in bad faith.

At the same time, courts are not blind to the circumstances surrounding the filing of a bankruptcy case, nor should they be.  As the bankruptcy court in this District observed, "[a]lthough filing for bankruptcy on the eve of foreclosure is not *per se* bad faith, the Debtor's penchant for repeatedly doing so can be considered as evidence of bad faith."  *In re Casse*, 219 B.R. 657, 661 (Bankr. E.D.N.Y. 1998) (citations omitted).

That is, in assessing the question of a debtor's good faith, one factor – and a significant one – is the timing of the filing, and whether the filing of the case appears to be strategically timed to hinder or delay a creditor in another forum by triggering the protection of the automatic stay.  Another factor is whether the filing was "bare bones" – incomplete in substantial and material ways.  Were the schedules and statements filed, and if they were, do they contain the relevant information?  If the case is one under Chapter 13, has a plan been filed?  Was the filing fee paid or were installments or a waiver requested?  A third consideration may be whether the debtor has attended the Section 341 meeting with the trustee assigned to the case.  And if some of these steps have been missed has the debtor taken steps to address the substantive and procedural deficiencies in the case?  Or did the debtor simply do the bare minimum to gain the short-term protection of the automatic stay, in a strategic way, in order to hinder or delay a creditor?  And finally, has the debtor filed for bankruptcy before, and what has been the path in those prior cases?

If a debtor's filing appears to be strategically timed to halt a foreclosure sale, an eviction, or other activity by a creditor to pursue its rights, *and* most or all of the required bankruptcy schedules and statements and a plan are missing or incomplete, *and* the requirement to pay the filing fee or seek installments or a waiver is simply ignored, *and* the debtor disregards the Section 341 meeting requirement, then a presumption that the debtor has not filed the case in good faith may well arise.

In addition, if a debtor has filed for bankruptcy more than once – or twice or three times – or multiple cases affecting real property have been filed in a coordinated way, that as well may be a disconcerting sign, and point in the direction of a finding that the debtor has not filed for bankruptcy protection in good faith.

And if the debtor does nothing to address the situation, then the presumption may rest unrebutted, and the conclusion that the debtor has not proceeded in good faith may be required.

But here again, this may not be the end of the story. Often, to be sure, nothing changes – the missing schedules and statements remain missing, the filing fee requirement remains unaddressed, and the Section 341 meeting is rescheduled by the trustee without an appearance. But sometimes, the debtor follows up and addresses the deficiencies, including with the assistance of a newly retained attorney. Missing or incomplete schedules and statements are filed and supplemented. The filing fee is paid, or installments or a waiver of the fee are requested. A Section 341 meeting is rescheduled, and the debtor attends – and the meeting is closed successfully. And in a Chapter 13 case, a plan is filed, and plan payments are made. And when most or all of these things occur, the debtor may well have, in substance, turned back the presumption that their case was not filed in good faith.

And so here. On September 26, 2022, when Ms. Nedd filed this bankruptcy case, the resumption of the trial in the Matrimonial Action was just two days away. Opp. to Dismissal ¶ 7. While Ms. Nedd paid the filing fee in full, her bankruptcy filings were incomplete and included only the Petition – Official Form 101 – and her Statement Pursuant to Local Bankruptcy Rule 1073-2(b). *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 1; *In re Bernadette Nedd*, Case No. 22-42353, ECF entry dated September 26, 2022. Much of the information on her Petition was missing. *See In re Bernadette Nedd*, Case No. 22-42353, ECF No. 1. And in this Chapter 13 case, at the time Ms. Nedd filed her petition, there was no Chapter 13 plan.

But soon after the case was filed, these circumstances changed. Within a period of a few weeks, on October 31 and November 1, 2022, Ms. Nedd retained counsel and filed the missing schedules and statements, identifying the value of the Property and her interest in it, her secured

33

and unsecured claims, and her income and expenses. *See In re Bernadette Nedd*, Case No. 22-42353, ECF Nos. 17, 18, 19, 21.

And less than three months later, on January 17, 2023, Ms. Nedd filed a Chapter 13 plan. *See In re Bernadette Nedd*, Case No. 22-42353, ECF No. 30. Over the course of the following five months, Ms. Nedd filed several amended Chapter 13 plans, addressing both economic and technical terms of her plan. *See In re Bernadette Nedd*, Case No. 22-42353, ECF Nos. 34, 36, 37, 39. On June 28, 2023, she filed her fourth amended, and fifth overall, plan, and proposed to pursue a loan modification through this District's loss mitigation program, and to make a reduced payment to general unsecured creditors. *In re Bernadette Nedd*, Case No. 22-42353, ECF No. 39.

And finally, on January 3, 2024, when these avenues had run their course without a resolution, Ms. Nedd requested the voluntary dismissal of her Chapter 13 case to permit her to address the ongoing litigation in the Matrimonial Action, including a pending appeal. *See* Debtor's Mot. to Dismiss ¶¶ 4-5. And the Court entered an order dismissing the bankruptcy case that same day. *In re Bernadette Nedd*, Case No. 22-42353, Dismissal Order.

That is, if Ms. Nedd's bankruptcy case had not progressed from a "bare bones" filing to a substantially complete case with the evident bankruptcy purpose to address her debt within just a few weeks, that would be a different situation indeed. But viewed in light of the entire record, and mindful of the high standard for the imposition of sanctions, the Court cannot conclude that this bankruptcy case was "without a colorable basis" and filed in "bad faith." *See Schlaifer Nance*, 194 F.3d at 336.

*          *          *

For these reasons, and based on the entire record, the Court finds and concludes that Mr.

34

Nedd has not shown that he is entitled to an award of attorney's fees and costs pursuant to the Court's inherent authority.

*Whether Mr. Nedd Has Shown that He Is Entitled to an Award of Attorney's Fees and Costs Under Judiciary Code Section 1927*

The Court turns to the question of whether Mr. Nedd has shown that he is entitled to an award of attorney's fees and costs under Judiciary Code Section 1927.

Section 1927 of the Judiciary Code states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

The Second Circuit has held that a bankruptcy court may impose sanctions pursuant to Section 1927. As the court observed, "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 if it finds that '[an] attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Baker v. Latham Sparrowbush Assocs.* (*In re Cohoes Indus. Terminal, Inc.*), 931 F.2d 222, 230 (2d Cir. 1991) (quoting *Oliveri*, 803 F.2d at 1273).

The starting point for considering a request for sanctions in the form of an award of attorney's fees and costs under Judiciary Code Section 1927 is the precise nature of the conduct that comes within the scope of the Section. Section 1927 addresses the conduct of an "attorney or other person admitted to conduct cases in any court of the United States." 28 U.S.C. § 1927. It does not concern, and cannot reach, conduct by their clients, or by unrepresented parties. As one bankruptcy court has noted, "[t]he language of § 1927 limits the court's sanction power to *attorney's actions* which multiply the proceedings in the case before the court." *In re Galgano*,

35

358 B.R. at 104 (emphasis added) (quotation marks omitted).  Section 1927 also permits sanctions before the court from whom the sanctions are sought – not other courts.

The path to succeeding on a motion for Section 1927 sanctions has several steps.  As the Second Circuit has found, "[t]o impose sanctions under § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay."  *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (citations and alterations omitted). "[A] showing of bad faith by clear and convincing evidence is a prerequisite to imposing sanctions under both § 1927 and the district court's inherent authority."  *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 286 n.22 (2d Cir. 2021).

"[B]ad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)).  The continuation of proceedings resulting from no more than "poor legal judgment," without persuasive and credible evidence to show bad faith, is not sufficient for sanctions to be imposed.  *Salovaara*, 222 F.3d at 35 (citing *Schlaifer Nance*, 194 F.3d at 340).

Courts have held that Section 1927 authorizes sanctions only for conduct before the sanctioning court.  *See In re Galgano*, 358 B.R. at 104-05 (collecting cases).  And there must be some causal link between the alleged misconduct, on the one hand, and the fees to be shifted, on the other.  *Goodyear Tire & Rubber Co.*, 581 U.S. at 108 n.5.

Courts agree that the grounds for an award of sanctions, including attorney's fees, pursuant to Section 1927 and the court's inherent authority are substantially similar.  Indeed, as the Second Circuit has observed:

> [T]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is, as noted above, that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

*Oliveri*, 803 F.2d at 1273.  To that end, as this Court has noted, "[a]s a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry, because 'the same standard applies to both theories.'"  *In re Khan*, 488 B.R. at 531 (alterations omitted) (quoting *In re Green*, 422 B.R. 469, 474 (Bankr. S.D.N.Y. 2010)).

And courts agree that in seeking sanctions under Section 1927, the movant bears the burden to establish that it is entitled to relief.  As this Court has found, "[i]n a sanctions motion under Section 1927, the burden of proof is on the moving party."  *In re Khan*, 488 B.R. at 529 (citing *Intelli-Check, Inc. v. TriCom Card Techs., Inc.*, 2005 WL 3533153, at *11 (E.D.N.Y. Dec. 22, 2005)).

Finally, the question of whether to impose sanctions pursuant to Section 1927 is, by the statute's terms, committed to the sound discretion of the court.  As one court explained, "even where the statutory standard is met, § 1927 by its terms ('*may* be required') confides an award of fees against counsel to the Court's discretion."  *Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, 2003 WL 22434153, at *7 (S.D.N.Y. Oct. 24, 2003) (quotation marks omitted).  *See*, *e.g.*, *Kassenoff v. Kassenoff*, 2024 WL 291225, at *4 (S.D.N.Y. Jan. 25, 2024) (same, citing cases).

In addition, the threshold for Section 1927 sanctions is high indeed.  As the Second Circuit has explained, "'[t]o impose sanctions under § 1927, a court must find clear evidence that

37

(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay.'" *Huebner*, 897 F.3d at 55 (alterations omitted) (quoting *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018). The challenged conduct must have occurred before the sanctioning court, and it must have a causal link to the attorney's fees and costs that are sought. *See In re Galgano*, 358 B.R. at 104-05; *Goodyear Tire & Rubber Co.*, 581 U.S. at 108 n.5.

Here, the record shows that Mr. Nedd has not shown that he is entitled to an award of attorney's fees and costs under Section 1927, for several reasons.

At the outset, Mr. Nedd points to the timing of the commencement of Ms. Nedd's bankruptcy case, and the incompleteness and inaccuracy of her initial filings. But Ms. Nedd's case was filed – with all of its flaws – on September 26, 2022, before Ms. Nedd's attorney entered his appearance in her bankruptcy case, on October 31, 2022. That is, these were actions by Ms. Nedd, not her attorney.

And most or all of the deficiencies, including missing and assertedly inaccurate schedules and statements, were addressed and corrected, or substantially corrected, by Ms. Nedd's attorney soon after he entered the case. *See, e.g.*, Schedule A/B at 9, ECF No. 17 ($374,000 in total assets); Schedule J at 2, ECF No. 19 ($300 in monthly home insurance); Official Form 122C-1 at 1, ECF No. 18 ($1,520 in net monthly income from rental or other real property); Amended Statement of Financial Affairs at 4, ECF No. 35 (disclosing *Marcus Nedd v. Bernadette Nedd*, 552993/20).

Mr. Nedd also identifies concerns that date back to Ms. Nedd's conduct in the Matrimonial Action, and points to the entry of a sanction by the State Court in response to her actions there. But in the context of a request for Section 1927 sanctions, conduct in that action,

no matter how much it may have frustrated Mr. Nedd, is not the same as conduct in this Court.

That is, while Mr. Nedd has correctly raised valid questions and concerns as to the timing and status of Ms. Nedd's bankruptcy case as of the date it was filed, he has not met his burden to show by "clear evidence" that her attorney's "claims were entirely without color," and "the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Huebner*, 897 F.3d at 55 (quotation marks omitted).

For these reasons, and based on the entire record, the Court finds and concludes that Mr. Nedd has not shown that he is entitled to an award of attorney's fees and costs pursuant to the Judiciary Code Section 1927.

### Conclusion

For the reasons stated above, and based on the entire record, the Court finds that Mr. Nedd has not established that he is entitled to sanctions in the form of an award of attorney's fees and costs pursuant Bankruptcy Code Section 523(a)(2)(A), the Court's inherent authority, or Judiciary Code Section 1927.

An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



Dated: Brooklyn, New York
　　March 26, 2026

Elizabeth S. Stong
United States Bankruptcy Judge